Good morning. May it please the Court. The central issue in this appeal is the legal matter of the Federal Communications Commission. The case arises because the defendants certified under oath to the FCC that they did provide broadband at the FCC-required threshold speeds in Venture Service Area, plaintiff's service area, when, as the district court concluded for purposes of summary judgment, the defendants could not provide that service in 341 of Venture doesn't it have to be willfully false? Yes. Okay. Proceed. Yes. And based on the false certification, the FCC You went back to false. Willfully false. Anytime you say false, you mean willfully false. Yes, Your Honor. Thank you. Okay. Proceed. Yes. Based on the willfully false certification, the FCC determined that defendants were an unsubsidized competitor, and therefore, they denied Venture in excess of $12 million in support funding to provide service in those areas. Now, the FCC requires carriers to submit a Form 477, and the Form 477 is submitted under penalty of perjury, and the provider has to, among other things, submit where they deploy broadband and at what speeds. And the FCC relies on that information to determine when and where and how much funding to provide through its ACAM program, Alternative Costs America model. Now, the FCC requires the form to be under penalty of perjury because it relies on this data and because it uses that to determine whether broadband is, in fact, available in these high-cost rural areas. Now, the defendant's remarkable position in this Court and the holding below is that the FCC requires carriers to report by census block only what they advertise in the census block, even if the provider cannot make that service available. As the district court found in this case, they could not. I think that misstates what the FCC is applying, but I don't profess to understand the complexities of it. But they also require this, you've got to be able to do it in one block. Correct. And the standard is you report a block as served if they can provide that speed to at least one location in the census block. That's absolutely correct. It's absolutely correct. We're not limited to advertised. The standard is the maximum advertised speed that the provider can make available to at least one location in the census block. The defendant's position and the holding of the district court was that it doesn't matter if the provider can make that speed available to any location in a census block. That's what the district court held and that's what the defendants... You're saying it has to be one customer in all 525? No, each census block has a number of locations in it. In this case, there's 341 census blocks where Northern Valley, the defendant, could not make broadband available at 25.3, which is the record of its speed, to at least one location in that census block. And the district court held and the defendants here argue that it doesn't matter and that the FCC is going to spend billions of dollars appropriated by Congress based on what a provider advertises, even if that provider can't make it available. It defies the law and it defies common sense. Now, the legal framework here is the Communications Act. And the Act expressly provides that the purpose is to regulate interstate and foreign commerce and communication so as to make available, so far as possible, to all the people in the United States. It's 47 U.S.C. 151. It goes on to say that Congress directed the FCC to follow certain universal service principles, including quality services should be available at just, reasonable, and affordable rates. Are you attacking the form instructions? No. No, the instructions... You're not contesting that they are consistent with the statute? Absolutely. The instructions, the FCC orders are all consistent with the statute. The test is what can be made available. And the defendants in their briefing do not mention the Communications Act, silent, in all the pages of the briefing. And what they've done, they've essentially written availability out of the Act and made it a question of advertising. You know, you're, you sound like you're arguing facts and then you're off to law, and you're saying, okay, it doesn't matter whether the statute, you agree that the form follows the statute, and then you say they don't even mention the statute in their brief. I don't understand why they'd have to. Well, because... If they, if the form, if they follow the form and the form's consistent with the statute, end of case. But that's the point, is they don't follow the form and they don't follow the directions. Why aren't we getting the evidence on that? Well, that's the point. That's why there's a significant... I thought the form was limited to the advertised speed. No. The form is the maximum advertised speed that is available to at least one location in a census block. And to answer Judge Loken's question, that's why we need a trial in this matter, because there's disputed issues of fact as to whether they could. The defendants don't come to court here and even acknowledge that they couldn't make broadband available to at least one location. And the standard is beyond dispute, and the clearest proof of that is what the defendants said all through discovery. Their interrogatory answers at Appendix 322, Northern Valley's understanding that the system is capable of providing broadband service at speeds at or above 25.3 megabytes per second to at least one location in each of the overlapped census blocks. The Chief Financial Officer testified at Appendix 317, we understood it as only one customer in a block needed to receive that maximum speed, and then you considered the whole block reported at that level. This new — this is a legal fiction to come to this Court and argue without benefit of what they said in discovery, that it doesn't make any difference and that we defendants didn't know what the standard is, that it's just advertising speed. They said it over and over and over again in discovery under oath, and their own experts said at Appendix 269 that the order established providers of fixed broadband services would report their maximum advertised speed available to potential customers in each census block. And the FCC statements were completely consistent with that. We're not here challenging an FCC order. The orders are consistent with the Act and the instructions, and you cannot read availability out of it. It doesn't make any sense. The idea that the ACAM model and the FCC is going to design a system that rewards providers for incorrect, false, and willfully false advertising, which punishes competitors who are trying to provide that service, and more importantly, punishes consumers who are in these high-cost rural areas who don't have access to broadband, which of course is the whole purpose of the model, it doesn't make any common sense that that would be the standard, and the defendants knew it. But I thought the Northern Wireless acquisition and all of this back and forth between the two CEOs hating each other made this a much different case than what you're describing. Well, those are fact questions, which of course, that's why we need a trial. But the legal standard that this Court has asked to apply — What justification are we attacking? Well, there's December — You want to go back to 2017, whereas I understand that by 2019 they were meeting the availability requirement when you filed the case, not you. I mean, your client. No, understood. Respectfully, that's not correct. The December 2017 filings is what the FCC used to award the ACAM funding. In December of 2017, the defendants said they could serve 25-3 in those 341 adventure census blocks. We are not here debating that point. The district court found, in the light most favorable to the plaintiff, that they could not do it in 341 census blocks. Period. And that is not on appeal here. The FCC statements are completely consistent with this reading. The FCC had an order in 2016, and it's in Northern Valley's Appendix 190, where back in ACAM 1 there was a challenge process. I thought you sought reconsideration in the FCC, basically on this ground. No, we didn't. We didn't. And in that order, Your Honor, it was very clear that the carrier's ability to provide the requisite service to at least one location in the census block was the standard there. And because it couldn't be shown, the FCC rejected that challenge. In the notice of proposed rulemaking, the FCC made clear, the form requires providers to report under penalty of perjury census blocks in which they currently or could make service available and specifying whether the service is available for consumers. It's another statement. In 2018, Appendix 102, the FCC made clear again that 25.3 was the standard, and they were targeting areas that require high-cost support. It simply makes no sense that the test would be that they advertise it when they can't provide it. And, again, there is no dispute on this appeal that they cannot make it available, and that is the standard. Quickly, the defendants raised two arguments. They say they don't require engineering studies and they can just willy-nilly put down whatever they want. That's not true. What makes very clear, the FCC doesn't mandate exactly what you have to do, but you have to take some analysis so you can say under penalty of perjury and threat of imprisonment that the information that you're swearing to is true and correct. And defendants expert agree to that as well. And actual speeds is a red herring here. They don't have to report actual speeds to each location. They have to report the maximum advertised speed they make available to one location in that census block. I'd like to reserve the rest of my time for rebuttal. Which document do you think is the key document that sets out the obligation? Well, I think the Act itself sets the framework. The defendant's position attesting to it, of course, they're in the industry. They're experts at it as well. The 2016 order, the August 2017 notice. There's no one place we look to see what the obligation is. You keep saying maximum advertised speed available to the customers. Right. Is that written down somewhere? I'm looking at form 477 instructions. This document is dated January 2, 2023. Section 8, glossary. Following terms are defined. Advertised speeds available. Broadband connections. Does that work? You agree that that's the governing document? No. That is a document. Those are the instructions. I think the governing document is Ventures Appendix 88. We're in August 2017. The notice of proposed rulemaking. Say that again. Cite that again? Yeah. It's Ventures Appendix. Slow down. Ventures Appendix, page 88. When the FCC says exactly what the form requires, and it says that you have to specify whether the service is available for consumers. It's Appendix 88, and it's paragraph 4. I'd like to reserve the rest of my time for rebuttal if there's no other questions. Thank you. Thank you. Thank you. Mr. Carter.  I'm David Carter on behalf of James Valley Cooperative Telephone Company and Northern Valley Communications. I'm going to start. Is there any difference between Venture Appendix 88 and the Form 477 instructions I was looking at? There is, Your Honor. I'd like to start with Appendix 88, which the parties have cited. Appendix 88 is a notice of proposed rulemaking. It is dated in 2017. In 2017, the FCC looked at making prospective changes to make the reporting obligations more granular. Ultimately, after adopting or reviewing the notice of proposed rulemaking, Your Honors, it took an act of Congress, the Broadband Data Act in 2018, to be adopted by Congress in order to implement more granular reporting requirements because of the concerns that many people had expressed repeatedly to the Federal Communications Commission that it was, in fact, using advertised speeds to make decisions about whether and where to deploy broadband funding. The FCC took an additional two years following the adoption of the Broadband Data Act to implement rules to enforce the Broadband Data Act, where, for the first time, they required carriers to begin using engineering certifications in connection with their broadband reporting. The industry has known for an extended period of time, including Venture itself, who went to the FCC and told the FCC it should stop using advertised speeds as a basis for making decisions on broadband reporting, that this was an issue. But if you think about this in the historical context, the Form 477 was created well before the ACAM2 program ever existed. The Form 477 reporting was designed to allow the FCC to begin to gather and understand what areas of the country had broadband services and, more importantly, what areas of the country had competitive broadband services. And so Congress did not appropriate and the FCC did not have funds to solve all of the broadband challenges at one time. They needed to surge resources and direct them to the places most in need. And so by being able to gather and understand where service was available and then to understand where there was competitive services, they could direct funds to the places where there were no services available. And that was the first priority for the FCC. As time goes on, as you would imagine with federal programs, the FCC is able to implement heightened reporting requirements, they're able to implement new broadband mapping rules and regulations, and they are therefore able to continue to narrow and target the funds in more particular ways. But if you look at 2017, when this report was filed by Northern Valley, and I'm looking at our brief, our opening brief on page 10, there's been a lot of discussion this morning about the word available. Let me make sure that Your Honors appreciate what the word available means within the Form 477 context. It means that for purposes of this form, connections are available in the census block if the provider does or could, within a service interval that is typical for the connection, provision two-way data transmission to and from the Internet with advertised speeds exceeding 200 kilobytes per second. It does not say that service is available only if you have 25.3 megabytes per second. It says you have service available if you have 200 kilobytes per second. And so the completion of the Form 477 requires a two-step process. The first step is to examine whether or not any broadband service at 200 kilobytes a second or above is available in the census block. Once you have determined that the census block has service available, you then list that census block on your Form 477. The second step, then, is you ask, what is the maximum advertised speed? And here in the instructions for advertised speed, the FCC makes clear that advertising is not restricted to one particular means or methodology. It's on the web, what's in print, what's in broadcast or in-person conversations. So the carriers are instructed to look at all of their advertising, and then they are instructed to list the highest, the maximum advertised speed. And I think of the maximum advertised speed as the ceiling, right? No customer in this census block would get something above the ceiling. And so it's not asking and it is not directing carriers to list guaranteed speeds. And, in fact, the FCC in 2013 specifically said that there was not a reasonable means or methodology by which carriers could gather and ascertain the actual speeds available to their customers. And the FCC wanted to weigh the burden and the benefit of reporting, right? For small carriers like Northern Valley and rural South Dakota. Let me just stop you. Yes, sir. I gather you're saying the form and instructions I was looking at are more pertinent. That's correct, Your Honor. And for purposes of this appeal, in your view, what is the evidence that your client didn't have, couldn't meet the availability standard you just recited? Your Honor, there is no evidence that my client couldn't. When counsel says the district court agreed that couldn't do it in 341 of 525 cell blocks, that's referring to the advertised? What's that referring to as opposed to what you're talking about? Certainly. So what the court said in the order is that Venture had completed and submitted an expert report that said if you had to apply 25-3 service in order to be even listed on the Form 477, that their expert believed that there was 341 census blocks where we did not meet the 25-3 service. But the submission here and what the court, the district court found is that's not the standard. The standard for availability is 200 kilobytes per second. And once you've determined that there is availability. What's the 25 again? 25-3 is the. You say 25-3, which means what? Thank you, Your Honor. I apologize. 25 would be the download speed, 25 megabytes per second download speed. Three megabytes per second would be the upload speed. And so when. That's what your client advertised? That's correct, Your Honor. And the expert said in his opinion you can't actually provide that. In his opinion based on the. But you're saying that even if that's true, the service is still, quote, available in your view under the regulation because availability is a lower threshold than the 25-3. That's correct, Your Honor. And more importantly, that once it is available, the instructions are very clear that you look to your advertising to determine what speed you're reporting. And what if the advertising is false? Sure. That's what the other side is going to be saying. That can't be right because they could just have an inflated false advertisement and get credit for that in the form. Is that really true? Is that how it works? Well, certainly that's a fair question, Your Honor. What I can tell you is twofold. First, that carriers, fixed wireless carriers like Northern Valley, across the country reported consistently in every single census block the same speed. So if you look at the Form 477 for T-Mobile, for example, who has fixed wireless service, in every single census block that T-Mobile provides service, it listed 25-3. So it is not the industry custom or practice to go and say to advertise only for one census block and direct advertisement differently to a different census block. You look at, and the FCC's instructions say, you look at what's in the print, what's on radio, what's on television. And those advertisements simply are not directly or custom-tailored to each census block. They cover a larger area. In Northern Valley's advertising, as the Court found, the lowest speed package that Northern Valley advertised was 25-3. And it specifically says, asterisks, speed's not guaranteed in all areas. So consumers — Right. But what if a speed can't be provided in any area? Well — It's just a false advertisement. And the company knew that. Is that still a permissible completion of the form? Your Honor, I would respectfully submit that the consumer in those circumstances may have remedies through State court action. But the FCC's rules do not govern advertising. And this is an issue, respectfully, that many people took to the FCC, including Venture. And they asked the FCC to change the rules or apply some different standards. But the FCC was pretty reasonable, right? It understood, particularly in this time period, 2000 — the order on the Form 1487, excuse me, came out in 2013, when the industry was still deploying broadband. And the FCC was balancing competing factors. It wanted reporting, but it didn't want to make that reporting so onerous and so detailed as to make it impossible for small carriers like Northern Valley to comply with the reporting obligations. The FCC's order is very particular about the duties and burdens that it was balancing at that time. And its choice was to say — to report the advertised speeds. And so certainly, again, we fast forward and we get to today, where the FCC and Congress have acted to enhance and improve the reporting requirements. And now they come with a requirement that you actually do have an engineer certify the reporting, that you have studies done and that you have engineers involved in the process. That simply wasn't the standard at the time in which this reporting was held up. Counsel, could the advertising have been willfully false? The advertising would not have been willfully false. No, no, no. I'm talking, is it possible that an entry on the 477 would not comply with Federal law and be willfully false advertising? Your Honor, under the real-life circumstances, I don't believe that that is true as long as you have a — You're saying no advertising can be willfully false. That's, I think, where you're going. No, sir, Your Honor. The network that Northern Valley installed and the network it purchased from Northern Wireless was capable and demonstrated providing speeds of well over 78, right? So well above 25.3. It provided speeds in some locations 20 miles from the tower that were at 90 over 10, right? So the network — I appreciate your focus on the facts, but could it be willfully false? I believe that if you knew, that you didn't even have a network in place. Right. And there were carriers, Your Honor, where the FCC took action because they said, you reported service in States you're not even licensed. Right. So, of course — But are you saying as long as the advertisements were out there, that the completion of the form would not be willfully false, even if the advertising was false? Because all you've got to do to comply on the form is put down actual advertisements? I think it's a little more nuanced than that, respectfully. I believe that, as I was alluding to Judge Benton, that if you did not have a network deployed at all and you nevertheless put advertisements out in areas that you knew and targeted those advertisements to areas you knew you couldn't provide any service, that that, in fact, could become — you could have advertised and you could still have willfully false. But if you're advertising two areas, as Northern Valley was, right, there is no dispute that Northern Valley has a wireless network. It invested, it purchased the network from Northern Wireless in this overlap area that we're referring to. And there is no dispute that Northern Valley had a network. And there is no dispute that Northern Valley advertised only speed packages above 25.3. And so there's — in these circumstances, it not only complied with the rules, but its behavior and its conduct was perfectly consistent with the reality, again, that you can't reasonably target, you know, different advertising to different census blocks. You take the area as a whole. You advertise to them. You offer your services. And as Northern Valley did, you tell consumers that not every single house in the area will get the same service. And I think this is important because if you're looking at how fixed wireless networks propagate their signal, you're going to have places, by necessity, that get one caliber of service on this side of the road. Maybe the other side of the road is a hill or is a valley. You have a structure or a tree that interferes with the signal. You're not guaranteeing, and no fixed wireless provider could ever guarantee, that every single customer in the service territory will get a minimum speed. But I thought the Venture's argument here isn't — it's not a question of whether some do and some don't. It's that nobody gets it. Nobody gets the 25.3 as their position based on their expert. Well, Your Honor, that is — that is the position that their expert has taken with regard to certain census blocks. But again, the FCC has said you do not look at engineering studies to make this determination. The FCC has been explicit that engineering studies like the one that Venture tries to rely upon — What kind of study? Engineering. Yeah. So the FCC has been explicit, repeatedly explicit, that such engineering studies are not relevant to the determination of whatever type of — And what was your point? You said the FCC had done something later. That's correct, Your Honor. What are you referring to there? Yes. So in 2000 — let me just make sure I have the dates correct for you. So the Congress adopted — excuse me, I think I said 2018 earlier. Congress adopted the Broadband Data Act in 2020, and it did so explicitly to raise the bar for reporting requirements on Form 477. It was concerned that as time went on that the FCC continued to rely on advertised feeds, and so it raised the bar in 2020. And then the FCC took two years to implement and adopt new rules under the Broadband Data Act that became effective in 2022, where carriers then had to start reporting relying on engineering studies. So if you look, again, historically — But your point is that the objection that's raised about your case has been addressed by Congress and the FCC since then. That's correct, Your Honor. And more importantly, that the fact that Congress and the FCC had to act and adopt a new law and adopt new rules is clear evidence that that was not the standard that existed in 2017 when Northern Valley filed its reporting. Thank you. Thank you, gentlemen. Thank you. The point that Your Honor is focused on is exactly the plaintiff's argument, and that is that if the standard is only what's advertised, any provider can advertise anything anywhere. And that can't be the test, because the goal, the framework under the Act and under the FCC and under the programs is to provide broadband services to underserved area. And that is completely undermined by the position that the defendants take, that they take before this Court that we can advertise whatever we want, and that will have the functional equivalent of knocking out venture. And more importantly, there's consumers who aren't going to get that service, because the consumers who need telehealth and want their kids to sign on so they can get to school through Zoom, they don't care what's advertised. And the FCC's goal is to get those folks the service so they can actually get the higher quality broadband. That's the whole purpose of the Act, and that's why Congress is appropriating billions of dollars. Looking at 2022, none of that's in the record, and it has nothing to do with this case, what's happened recently, and it hasn't been briefed, and quite frankly the counsel is talking about things that are new. Well, I asked him a question. Fair enough. And it's in the public record. I mean, it's in the public domain, so we'll decide if it's not relevant. Fair enough. Okay. Last point, Your Honor. On page 12 of the brief, of the defendant's opening brief, in these instructions that have been alluded to so often, it says specifically, what do we consider so we can have accurate deployment data? And it says, the FCC says it's up to the provider to determine its deployment footprint based on the guidance and the documents, but one option would be to use GIS mapping software, and it lists three different types to determine the census blocks that are at least partially covered. The FCC has always anticipated that the provider would have to do some level of due diligence so it could certify under oath that it was actually making the service available. What the FCC didn't say is we're going to make you use this specific type of engineering study, and that's a critical distinction here. The FCC has always required due diligence. Otherwise, there would be no teeth to the Form 477 certification. What were you just quoting from? I'm quoting from the frequently asked questions. It's page 12 of Northern Valley's opening brief. Okay. And the question is specifically what needs to be done so we can report it accurately, and the answer is it's up to the provider to determine, but these are some suggestions to how you can use it. That was a 2019 FAQ, right? No, it's up and through 2019. These were in effect at the time. You've just been telling us all that's irrelevant because you want to go back to the world in 2017. No, no. These were in effect in 2017. And remember, this is the defendant's brief citing these instructions. It does that these instructions were in effect in 2017. You guys couldn't make this more confusing. It is confusing. All right. Thank you, Your Honor. We'll take it under advisement and try to sort it out. Thank you.